McKinney, J.,
delivered the opinion of the Court.
On the 28th of December, 1850, and 3d of January, 1851, Henry Chiles conveyed certain slaves to Jesse Williams and William Kodgers, respectively, by bills of sale *249 absolute upon their faces, reserving possession of the slaves, however, during his life. The sole object of these conveyances, was to effect the emancipation of said slaves, immediately on the death of said Chiles; and this method was resorted to, by the advice of Williams and Rodgers, that in the state of the law, the slaves could not be emancipated by Will, or otherwise than in the mode stated.
Finding that he had been deceived by Williams and Rodgers, in whom he had placed great confidence, and that they were fraudulently setting up claims to the slaves as absolute owner, because the trust had not been expressed upon the face of the bills of sale, Chiles filed a bill in the Chancery Court, at Knoxville, in May, 1853, against Williams and Rodgers, to have the absolute bills of sale cancelled, and the legal title divested out of them, so as that, his most cherished purposes — the emancipation of the slaves — might not, by the gross fraud of the trustees, be defeated, or in any way embarrassed. It is not intimated in that bill, that Chiles desired to revoke the gift of freedom to the slaves ; on the contrary, their emancipation is re-affirmed to be his “favorite object,” to secure which, beyond all hazard, was the sole purpose of the bill.
Pending that suit, Chiles died, and the cause having been revived in the names of his executors, a final decree was made therein in January, 1857, by which, among other things, said bills of sale were declared fraudulent and void, and the possession of the slaves was ordered to be delivered to the executors of Chiles.
On the 16th of December, 1854, during the pendency *250 of that cause, Chiles made and published his Last Will and testament, in which he provides for the amancipation of said slaves; and devises and bequeathes to them certain real and personal property.
The widow dissented from the Will, and one of the objects of the present bill is, to have the rights of the dissenting widow, and also of the slaves, declared by a decree of the Chancellor.
The main point of inquiry is, were the slaves invested with a, right of freedom by the acts of Chiles, prior to the execution of the Will, or is the right to freedom derived solely from the Will ? The Chancellor held that the right of the slaves rested alone upon the Will, and consequently, that, as against the dissenting widow, the slaves are to be treated as part of the testator’s estate at the time of his death, to one-third of which she is entitled. The decree, however, gives to the widow, not one-third of the slaves in specie, but the value in money, of one-third of the slaves, to be paid out of the pecuniary legacies given to others by the Will.
We think the decree is erroneous. By our law, the right of freedom, so far as it is in the power of the owner to bestow that right upon his slave, may be conferred by parol; nothing more is requisite than the full and free consent, or agreement of the owner, to invest the slave with such a right. A pecuniary consideration moving from the slave to the owner, is not essential. The right is not imparted by force of a formal contract, in the legal sense, for the slave as such, is incapable of making a contract for his freedom, or of paying a valuable consideration, as he can have nothing to give.
*251 The right must, therefore, be regarded in the present case, as the pure gift of the owner, based upon some moral and not on a legal consideration.
Whether or not such gift may be revoked, before being complete, by the act of emancipation of the slave in the statutory method, we need not now inquire. It is clear that the filing of the bill by Chiles against Williams and Rodgers, was not intended to revoke the gift of freedom to the slaves; but on the contrary, was designed to secure ¡hem in that gift. And it is no less clear that the decree in that cause cannot be construed to operate as a revocation of the gift of freedom.
The decree contemplated nothing more than to divest the legal title to the slaves out of Williams and Rodgers. The right of the slaves was not in judgment, nor were they parties to that suit. The trust by which their right was intended to be secured, was not declared in the bills of sale, but vested solely in parol. Consequently the decree cancelling the bills of sale, and divesting the legal title of Williams and Rodgers, cannot be held to have any effect upon the parol trust, previously declared in favor of the slaves; and by which, in and of itself, the slaves were vested' with as perfect right of freedom, as it was in their owner’s power to bestow ; which gift was never revoked, but on the contrary, was reaffirmed in the bill filed against Williams and Rodgers, and also in the Will of Chiles.
In this view, the slaves were not the property of the estate of Chiles, at his death, nor did they become the property of his estate, by force of the cancellation of the conveyances to Williams and Rodgers by the *252 decree rendered after bis death, consequently the widow can assert no claim to said slaves.
The slaves are clearly entitled to their freedom, but they must be sent to the Western coast of Africa, unless they shall bring themselves within the exemption of the recent enactment upon that subject.
Decree reversed and the cause remanded.